IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC CRUZ, *Petitioner,* v. MARK CAPOZZA, et al., *Respondents.* | CIVIL ACTION NO. 19-1419 |

**PAPPERT, J.**                                                                                                         April 3, 2023

### MEMORANDUM

A Pennsylvania state court jury convicted Eric Cruz of aggravated assault, recklessly endangering another person and possession of an instrument of crime. He was also convicted of being a person not to possess a firearm at a subsequent bench trial and sentenced to 15 to 30 years in prison. After a full round of appeals in the state courts and the completion of state post-conviction review, Cruz filed a Petition for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254. (ECF 1.) Magistrate Judge Lloret issued a Report and Recommendation recommending the denial of all five of Cruz's claims. (ECF 19). Cruz filed an objection to the recommendation on just one claim. (ECF 25). After thoroughly reviewing the record, the R&R and Cruz's objection and finding no clear error with respect to all portions of the R&R to which Cruz did not object, the Court adopts the R&R in full and denies Cruz's petition.

I

The case's background is set forth in Judge Lloret's R&R and need only be summarized. Early on the morning of September 1, 2012, a fight broke out in front of the Star Social Club, an after-hours drinking establishment in West Chester,

1

Pennsylvania.  Jareal Mills was shot during the altercation.  At first, Mills told police he did not know who shot him.  But several days later, Mills identified Cruz in a photo array, admitting that he knew who the shooter was all along but feared retaliation.  (N.T. 5/13/14 at 143–44.)  At trial, Mills recanted, testifying that he was too intoxicated at the time he was shot to identify the shooter with confidence.  (*Id.* at 150–55.)

Sixteen days after the shooting, Cruz admitted during a custodial interview with police that he was at the Star Social Club on the night of the shooting and was involved in the fight.  (N.T. 5/14/2014 at 165.)  He denied that he was the shooter, claiming he was "curled up in a ball" on the sidewalk at the time of the shot, protecting himself from being beaten.  (*Id.* at 167.)  Cruz claims he was never given his *Miranda* warnings prior to the interview.

Video evidence corroborated Cruz's presence at the scene of the crime.  The Star's surveillance cameras showed he was in the bar before the fight.  In addition, a Drug Enforcement Agency pole camera outside the club captured footage of the fight itself from approximately 100 feet away.  Although it was not possible to identify the shooter from the pole camera video alone, the figures in the video are distinguishable based on clothing, stature and complexion, and can be identified by comparison to the footage of patrons leaving the Star.  Furthermore, two police officers testified that they knew Cruz from the community and could identify him as the shooter based on the Star video, the pole camera video, and their own familiarity with him.

II

A

The Antiterrorism and Effective Death Penalty Act of 1996 requires prisoners to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before seeking federal habeas relief. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also* 28 U.S.C. § 2254(b). "A claim is exhausted if it was 'fairly presented' to the state courts"—that is, the petitioner "presented the same factual and legal basis for the claim to the state courts." *Nara v. Frank*, 488 F.3d 187, 198–99 (3d Cir. 2007). "A petitioner can 'fairly present' his claim through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* at 198.

A federal court may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless" the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court ruling is "contrary to" clearly established federal law if it "(1) 'contradicts the governing law set forth in [the Supreme Court's] cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

[different] result.'" *Gibbs v. Frank*, 387 F.3d 268, 272 (3d Cir. 2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)) (cleaned up). A state court's application of clearly established federal law is unreasonable if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. An application that is incorrect but not unreasonable cannot be the basis for habeas relief. *Id.* at 411.

B

To prevail on an ineffective assistance of counsel claim, a habeas petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficiency prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance" is "highly deferential." *Id.* at 689. There is a "strong presumption" of effectiveness, and counsel's performance will not be found deficient unless it was unreasonable "under prevailing professional norms." *Id.* at 688–89. To establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted). On habeas review of a state court's ineffective assistance determination, the question before the Court is "whether there is any reasonable

argument that counsel satisfied *Strickland*'s deferential standard." *Id.* A court may address the *Strickland* prongs in any order and need not address both "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### III

### A

Cruz asserts five claims in his habeas petition. The first three allege ineffective assistance of trial counsel for (1) failing to move to suppress Cruz's statement to police that he was involved in the fight, (2) conceding Cruz's presence at the fight without first consulting him and (3) failing to object to the prosecutor's remark in closing that "urban people" live by a "street code" that discourages "snitch[ing]." He also claims he was denied due process when two police officers were allowed to offer lay opinions identifying him in the pole camera footage (claim 4) and, for claim 5, testify that they knew him from the community.

The Court reviews for clear error the portion of the R&R to which no objection is made. *Harris v. Mahally*, No. 14-2879, 2016 WL 4440337, at *4 (E.D. Pa. Aug. 22, 2016). With respect to the four unobjected-to claims, no clear error appears on the face of the record and the Court accepts Judge Lloret's recommendations.

### B

Cruz objected solely to that portion of the R&R regarding his claim that trial counsel's failure to move to suppress Cruz's statements to police rendered counsel's performance ineffective. The Court reviews *de novo* those portions of a magistrate judge's R&R to which a party objects. 28 U.S.C. § 636(b)(1).

During his interview with police, Cruz admitted that he was present at the scene of the crime and involved in the brawl, but insisted "he was being swarmed, kicked and punched by a group of people and was on the sidewalk at the time of the shot curled up in a ball." (N.T. 5/14/14 at 167.) Cruz argues that counsel was ineffective for failing to move to suppress this un-*Mirandized* statement. On PCRA review, the Superior Court found counsel's failure to seek the statement's suppression was not unreasonable because it was "substantially exculpatory" and its admission "would present the jury with [Cruz's] assertion that he was not the shooter without [Cruz] having to testify and be subject to cross-examination." *Commonwealth v. Cruz*, No. 556 EDA 2018, 2019 WL 334955, at *3 (Pa. Super. Ct. Jan. 28, 2019).[1]

The Superior Court's determination was not, itself, unreasonable. Cruz admitted to police that he was present at the scene of the crime and involved in a fistfight but denied that he was the shooter. At trial, the jury saw the surveillance video from inside the Star, which provided a clear, relatively close-up shot of Cruz and other patrons leaving the bar. Trying to convince the jury Cruz was not at the Star that night would have been futile, if not severely damaging to the defense's credibility. The pole camera video picked up outside the Star where the surveillance camera left off. As several witnesses demonstrated, although the time stamps did not match on the

---

[1] Pennsylvania courts apply a three-prong ineffective assistance of counsel analysis, asking first whether the petitioner's underlying legal claim has "arguable merit," then embarking on the *Strickland* analysis. *See Commonwealth v. Pierce*, 527 A.2d 973, 975–76 (1987). The Superior Court determined that Cruz's claim did not have arguable merit because he did not adequately plead a *Miranda* violation. *Commonwealth v. Cruz*, No. 556 EDA 2018, 2019 WL 334955, at *3 (Pa. Super. Ct. Jan. 28, 2019). It then analyzed *Strickland*'s deficiency prong "assuming *arguendo*" Cruz's claim was arguably meritorious.

Judge Lloret interpreted the first step of the Superior Court's analysis as an independent and adequate state-law procedural bar and considered this claim procedurally defaulted for habeas purposes. The Court analyzes this claim as one adjudicated on the merits by the state court.

cameras, tracking individual patrons exiting the Star and then appearing on the pole camera video showed there was no gap in the footage. *See, e.g.*, (N.T. 5/14/2014 at 209–10).

Focusing instead on the poorer quality of the pole camera video was not an unreasonable strategy. That video of the fight and shooting was of lower quality than the video from inside the Star. It was taken in the dark, from a distance of about 100 feet. *See, e.g.*, (N.T. 5/14/2014 at 175–76). Discerning the subjects' facial features was impossible; the only way to identify individuals was by comparing the figures' clothing color, complexion and stature to that of the individuals in the Star surveillance footage. The pole camera also recorded at only two to three frames per second—one-tenth the speed of normal video—which makes the subjects seem to jump around instead of moving fluidly across the screen. (N.T. 5/13/2014 at 78.) This made it challenging to track a subject through the chaotic fight scene. It was not unreasonable for counsel to attempt to convince the jury that their eyes had skipped to the wrong figure, like the loser in a shell game, after losing track of Cruz in the "pile of bodies" in the brawl.

The trial transcript supports the presumed effectiveness of counsel's approach in not moving to suppress Cruz's statement to police. In his closing argument, counsel said:

> You didn't hear Mr. Cruz testify, but you heard that he did give a statement to the police and told the police, yeah, I was there. Again, we didn't contest that.
> Yeah, I got involved in a fight. And yeah, I was on the ground because I had been swarmed by guys from Coatesville and that is when the gun went off.
> And that is the best you can tell from the pole. There is no way to refute that, and it makes sense.

7

(Defense Closing, N.T. 5/15/2014 at 47–48.)  Allowing the jury to hear Cruz's side of the story (without subjecting him to cross-examination) was consistent with the clear video of Cruz in the Star, yet attacked the weakness in the prosecution's evidence—the inability to specifically identify Cruz from the fuzzier pole camera video.  A fair-minded jurist could conclude that this decision was not "outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.[2]

Because the Superior Court found that trial counsel's performance was not deficient, it did not assess whether Cruz was prejudiced.  He was not.  Reviewing this second *Strickland* prong *de novo*, *see Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005), there was sufficient evidence independent of Cruz's statement to support his conviction.  Cruz claims that the pole camera video was "not clear enough for the jury to identify Cruz as the assailant."  (Reply Br. At 9.)  While Cruz was not readily identifiable from the pole camera footage standing alone, the jury was able to view the lower-quality pole camera video in conjunction with the clear surveillance video showing Cruz (consistent with the police officers' testimony) as he left the Star.  Additionally, Mills, though he vacillated (something the jury could assess), identified Cruz as the shooter.  (N.T. 5/13/2014 at 143–44.)  Cruz has not shown a reasonable probability that absent his statement he was involved in the brawl, the trial's outcome would have been any different.

---

[2]    Cruz requested an evidentiary hearing in his habeas petition.  (Mem. of Law in Support of Habeas Petition at 49.)  An evidentiary hearing is not necessary where the record would not "leave a reasonable judge questioning why—other than inadvertence—counsel performed as he or she did" and "it is not so difficult for [the Court] to surmise why counsel [did not move to suppress the statement], and why that choice was at least reasonable."  *Frazier v. Sec'y Pa. Dep't Corr.*, 663 Fed. App'x 211, 214–15 (3d Cir. 2016) (nonprecedential) (discussing application of *Branch v. Sweeney*, 758 F.3d 226 (3d Cir. 2014)).  An evidentiary hearing is not necessary in this case because trial counsel's use of the statement in closing argument indicates why he decided not to move to suppress the statement and why such a choice would be at least reasonable.

IV

Cruz objects to Judge Lloret's denial of a certificate of appealability. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, a certificate of appealability will not issue because reasonable jurists would not debate this Court's ruling, and Cruz has not made a substantial showing of a denial of a constitutional right as required under 28 U.S.C. § 2253(c)(2).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.